OPINION OF THE JUSTICES of the Supreme Judicial Court Given Under The Provisions of Section 3 of Article VI of the Constitution.

Supreme Judicial Court of Maine.

Questions Propounded by the House of Representatives in a Communication Dated May 27, 1983.

Answered June 6, 1983.

HOUSE ORDER PROPOUNDING QUESTIONS OF THE SUPREME JUDICIAL COURT

State of Maine

In House *May 26, 1983.*

Whereas, it appears to the House of Representatives of the 111th Legislature that the following are important questions of law and that the occasion is a solemn one; and

Whereas, the Constitution of Maine, Article I, Section 2, provides that all power is inherent in the people of Maine; and

Whereas, the Constitution of Maine, Article IV, Part First, Section 1, reserves to the people of Maine the power to propose and enact laws and to reject at the polls any resolve, resolution or bill enacted by the Legislature; and

Whereas, the Constitution of Maine, Article IV, Part Third, Section 18, provides for public initiative of referenda on issues of concern to the citizens of Maine; and

Whereas, the Constitution of Maine, Article IV, Part Third, Section 17, provides for a people's veto of legislative enactments by use of the referendum process; and

Whereas, the Constitution of Maine, Article IX, Section 14, requires the submission of certain bond issues proposed by the Legislature to the citizens of Maine for approval; and

Whereas, the Constitution of Maine, Article IV, Part First, permits legislative use of the referendum process on issues the Legislature desires to submit to the citizens of Maine; and

Whereas, these constitutional procedures are integral to the form of democracy the citizens of Maine have chosen for their government; and

Whereas, protection of these procedures from corruption and the appearance of corruption is a paramount responsibility of Maine's State Government; and

Whereas, in recent years the use of these constitutional procedures has increased, as has the importance of the issues submitted thereby to the citizens of Maine; and

Whereas, the level of spending in referenda and bond issue elections has increased sharply, with many referenda and bond issue elections occuring amidst great disparities in spending between proponents and opponents to influence the outcome of the elections; and

Whereas, a bill, House Paper 11, Legislative Document 7, "AN ACT Relating to Referendum Campaign Reports and Finances," attached as Exhibit A, has been introduced into the House of Representatives and is now pending before that body; and

Whereas, the constitutionality of House Paper 11, Legislative Document 7, has been questioned and it is important that the Legislature be informed as to the constitutionality of the proposed bill; and

Whereas, it is important that the Legislature be informed as to the answers to the important and serious legal questions hereinafter raised; now, therefore, be it

Ordered, that the Justices of the Supreme Judicial Court are hereby respectfully requested to give to the House of Representatives, according to the provisions of the Constitution of Maine on its behalf, their opinion on the following questions, to wit:

Question No. 1: Do the differing limitations in House Paper 11, Legislative Document 7 (Exhibit A) on the contributions of individuals and corporations to political committees participating in a bond issue or referendum election deny equal protection of the laws to individuals in violation of the Constitution of Maine, Article I, Section 6–A, and the Constitution of the United States, Amendment XIV?

Question No. 2: In light of the fact that Maine law pertaining to elections, Maine Revised Statutes, Title 21, section 1, et seq., contains no limitation on the amount of money individuals or corporations may spend directly in promoting or opposing referendum or bond issues, in the event that the Legislature found that the initiative referendum, people's veto, legislative referendum and bond issues referendum processes were being corrupted, were in danger of being corrupted or appear to have been corrupted by great disparities in spending between proponents and opponents of measures submitted to the citizens of Maine for consideration, would enactment of House Paper 11, Legislative Document 7 (Exhibit A) limiting the contributions of individuals and corporations to committees participating in such referendum elections unconstitutionally abridge the freedom of speech of individuals or corporations in violation of the Constitution of Maine, Article I, Section 4, and the Constitution of the United States, Amendment I?

*(signature)*

(Rep. J. Diamond)

NAME:

TOWN: Bangor

Read and

HOUSE OF REPRESENTATIVES

On Motion of Mr. MR. DIAMOND

OF BANGOR

of

MAY 26 1983

Tabled Pending *passage*

CIALLY ASSIGNED FOR 5/27

HOUSE OF REPRESENTATIVES

Speaker laid before the House and

on Motion of Mr.

*passed*

MAY 27 1983

---

## ANSWERS OF THE JUSTICES

To the Honorable House of Representatives of the State of Maine:

In compliance with the provisions of section 3 of article VI of the Constitution of Maine, we, the undersigned Justices of the Supreme Judicial Court, have the honor to submit the following responses to the questions propounded on May 27, 1983.

QUESTION NO. 1: Do the differing limitations in House Paper 11, Legislative Document 7 (Exhibit A) on the contributions of individuals and corporations to political committees participating in a bond issue or referendum election deny equal protection of the laws to individuals in violation of the Constitution of Maine, Article I, Section 6–A, and the Constitution of the United States, Amendment XIV?

We decline to answer Question No. 1 since it is our conclusion that L.D. 7 (111th Legis.1983), if enacted, would be unconstitutional for the reasons set forth below in our answer to Question No. 2.

QUESTION NO. 2: In light of the fact that Maine law pertaining to elections, Maine Revised Statutes, Title 21, section 1, et seq., contains no limitation on the amount of money individuals or corporations may spend directly in promoting or opposing referendum or bond issues, in the event that the Legislature found that the initiative referendum, people's veto, legislative referendum and bond issues referendum processes were being corrupted, were in danger of being corrupted or appear to have been corrupted by great disparities in spending between proponents and opponents of measures submitted to the citizens of Maine for consideration, would enactment of House Paper 11, Legislative Document 7 (Exhibit A) limiting the contributions of individuals and corporations to committees participating in such referendum elections un-

constitutionally abridge the freedom of speech of individuals or corporations in violation of the Constitution of Maine, Article I, Section 4, and the Constitution of the United States, Amendment I?

Because it our opinion that L.D. 7, if enacted, would violate individual and corporate rights of association and free expression guaranteed by the First Amendment to the United States Constitution, as made applicable to the states through the Fourteenth Amendment, we answer Question No. 2 in the affirmative.

Three opinions of the United States Supreme Court control the resolution of the issue presented.

In *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), the United States Supreme Court invalidated those provisions of the Federal Election Campaign Act of 1971 [1] that imposed limitations on the dollar amount an individual or group could *expend* on a political candidate for federal elective office. The Court held that limitations on expenditures placed "substantial and direct restrictions on the ability of candidates, citizens, and associations to engage in protected political expression, restrictions that the First Amendment cannot tolerate." *Id.* at 58–59, 96 S.Ct. at 654. In the same opinion, the Court upheld that portion of the Federal Election Campaign Act of 1971 which imposed limitations on the dollar amount an individual, group or other business entity could *contribute* to any political candidate or to that candidate's election committee. In sustaining the limitation on contributions to political candidates, the Court created a narrow exception in recognition of the unique threat to our system of representative democracy posed by individuals who contribute large amounts of money "to secure a political *quid pro quo* from current and potential office holders." *Id.* at 26–27, 96 S.Ct. at 638.

In *First National Bank of Boston v. Bellotti,* 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978), relying on *Buckley,* the United States Supreme Court struck down state legislation that prohibited corporations from making *any* contributions or expenditures for the purpose of advocating views on ballot measures. The Court held that a state could not prohibit corporations any more than it could preclude individuals from expressing their political views in the context of a referendum or initiative measure. In so holding, the Court noted that: "Referenda are held on issues, not candidates for public office. The risk of corruption perceived in cases involving candidate elections ... simply is not present in a popular vote on a public issues." *Bellotti,* 435 U.S. at 790, 98 S.Ct. at 1423 (citations omitted).

Most recently, in *Citizens Against Rent Control/Coalition for Fair Housing v. City of Berkeley, California,* 454 U.S. 290, 102 S.Ct. 434, 70 L.Ed.2d 492 (1981), the Supreme Court confronted the very question now before us. In *City of Berkeley,* the Court held that a municipal ordinance that placed a $250 limit on contributions to committees formed to support or oppose ballot measures violated the rights of association and expression guaranteed by the First Amendment to the United States Constitution.[2] The Court distinguished *Buckley* as having identified "a single narrow exception to the rule that limits on political activity were contrary to the First Amendment." *City of Berkeley,* 454 U.S. at 296–97, 102 S.Ct. at 437. That exception relates to the perception of undue influence on a *candidate.* Quoting *Buckley,* the Court stressed that:

> [T]he concept that government may restrict the speech of some elements of our society in order to enhance the relative voice of others is wholly foreign to the First Amendment, which was designed

---

1. Federal Election Campaign Act of 1971, 86 Stat. 3, as amended by the Federal Election Campaign Act Amendments of 1974, 88 Stat. 1263.

2. The Berkeley ordinance was directed at individuals as well as corporations and other business entities, as is the proposed Act now before us.

"to secure 'the widest possible dissemination of information from diverse and antagonistic sources,'" and "'to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'"

*Id.* at 295–96, 102 S.Ct. at 437 (quoting *Buckley,* 424 U.S. at 48–49, 96 S.Ct. at 649 (citations omitted)).

Like the municipal ordinance at issue in *City of Berkeley,* L.D. 7 is directed exclusively at limitations on contributions with respect to political referenda and other such measures. It is our opinion that *City of Berkeley* is dispositive of the present question and that L.D. 7, if enacted, would violate individual and corporate rights of association and expression guaranteed by the First Amendment to the United States Constitution. In view of this conclusion, it is unnecessary to consider whether L.D. 7 would violate article I, section 4 of the Constitution of Maine.

Dated: June 6, 1983.

VINCENT L. McKUSICK
EDWARD S. GODFREY
DAVID A. NICHOLS
DAVID G. ROBERTS
GENE CARTER
ELMER H. VIOLETTE
DANIEL E. WATHEN

( EXHIBIT A )

FIRST REGULAR SESSION

ONE HUNDRED AND ELEVENTH LEGISLATURE

Legislative Document                                                No. 7

H.P. 11                          House of Representatives, January 5, 1983

Reference to the Committee on Election Laws suggested and ordered printed.

EDWIN H. PERT, Clerk

Presented by Representative J. Diamond of Bangor.
Cosponsors: Senator Carpenter of Aroostook, Senator Pearson of Penobscot and Representative Crouse of Washburn.

STATE OF MAINE

IN THE YEAR OF OUR LORD
NINETEEN HUNDRED AND EIGHTY-THREE

AN ACT Relating to Referendum Campaign
Reports and Finances.

Be it enacted by the People of the State of Maine as follows:

Sec. 1. 21 MRSA c. 35-A, first 2 lines, as enacted by PL 1977, c. 575, §17, are repealed and the following enacted in their place:

## CHAPTER 35-A

REFERENDUM CAMPAIGN REPORTS AND FINANCES

Sec. 2.   21 MRSA §1412-A is enacted to read:

§1412-A.   Limitations on contributions and expenditures

1.   Individuals.   No individual may make contributions in an aggregate amount greater than $1,000 to any campaign.

2.   Committees; corporations; associations.   No political committee, other committee, corporation or association may make contributions in an aggregate amount greater than $5,000 to any campaign.

3.   Political committee, intermediaries.   For the purpose of the limitations imposed by this section, contributions made to any political committee authorized by a campaign to accept contributions shall be considered to be contributions made to that campaign.

For the purposes of the limitations imposed by this section, all contributions made by a person, either directly or indirectly, on behalf of a particular campaign, including contributions which are in any way earmarked or otherwise directed through an intermediary or conduit to that campaign, shall be treated as contributions from this person to that campaign. The intermediary or conduit shall report the original source and the intended recipient of the contribution to the commission and to the intended recipient.

4.   Other contributions and expenditures. Expenditures made by any person in cooperation, consultation or concert with, or at the request or suggestion of, a campaign's political committee or its agents shall be considered to be a contribution to that campaign.

The financing by any person of the dissemination, distribution or republication, in whole or in part, of any broadcast or any written or other campaign materials shall be considered to be a contribution to that campaign.

5.   Certain expenditures prohibited.   A political committee, a party or committee thereof, a person required to file a report under this chapter or their authorized agents may not make any expenditure for liquor to be distributed to or consumed by voters while the polls are open on election day.

STATEMENT OF FACT

The purpose of this bill is to prevent undue influence of referendum campaigns through excessive contributions from a single source. This bill essentially provides the same limitations that are established for contributions to candidates.

0024111682